**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF BENCHMARK 2021-B30 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2021-B30,** | : : : : : : : : : : : : : : : : :: | **CIVIL ACTION**  **NO.** |
| **Plaintiff,** | | |
| **v.** | | |
| **TR-JACKSON, L.P.,** | | |
| **Defendant.** | | |

**COMPLAINT**

Plaintiff, Wells Fargo Bank, National Association, as Trustee, for the benefit of the holders of Benchmark 2021-B30 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2021-B30 ("Lender"), acting by and through its special servicer, Torchlight Loan Services, LLC ("Torchlight"), for its complaint against Defendant, TR-Jackson, L.P. ("Borrower"), avers as follows:

**I.    PARTIES, JURISDICTION AND VENUE**

1.    Wells Fargo Bank, National Association, is a national banking association with its main office, as designated in its Articles of Association, located in Sioux Falls, South Dakota.  Non-party Torchlight is the Special Servicer for Lender with respect to the Loan (as defined below).

2.    Borrower is a Pennsylvania limited partnership with its principal place of business at 441 E. Hector Street, Suite 150, Conshohocken, Pennsylvania 19428.  The General Partner of Borrower is TR-Jackson, LLC, a Delaware limited liability company, whose sole

#4922-2839-1343 v1

member is Anthony M. Rufo.  Mr. Rufo is also Borrower's Common Limited Partner.  The Preferred Limited Partner of Borrower is SCA Pref Fund II LLC, a Pennsylvania limited liability company ("Preferred Equity Investor"), whose sole member is Signature Capital Advisors, LLC, a Pennsylvania limited liability company, whose members are Mark Quigley and David Clark. Upon information and belief, Messrs. Rufo, Quigley and Clark are citizens of Pennsylvania, and none of them is a citizen of South Dakota.

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the action is between citizens of different states.

4.     Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district.

## II.    FACTS

### A.    The Original Loan Transaction

5.     Borrower owns the real property located at 1201 Jackson Street in the City of Philadelphia, as more fully described in Exhibit A to the Mortgage (defined below), together with the Improvements, Personal Property, Leases, Rents and other property as enumerated and defined in the Mortgage (collectively, the "Property"), which is operated as the Brush Factory Lofts apartments.

6.     On or about October 7, 2021, Citi Real Estate Funding Inc. ("Original Lender") issued to Borrower a commercial mortgage loan in the principal amount of $33,000,000.00 (the "Loan").

7.     The Loan is evidenced by a Promissory Note dated October 7, 2021, executed by Borrower in favor of Original Lender in the principal amount of $33,000,000.00 (the "Note"), a copy of which, with affixed allonge, is attached hereto as *Exhibit A*.

#4922-2839-1343 v1

8. To secure repayment on the Note, Borrower executed in favor of Original Lender an Open-End Mortgage and Security Agreement dated September 23, 2021, but effective as of October 7, 2021 (the "Mortgage"), with respect to the Property. The Mortgage was recorded with the Philadelphia Records Department (the "Recorder") on October 15, 2021, as Document No. 53890165. A copy of the recorded Mortgage is attached hereto as *Exhibit B*.

9. The Loan is also evidenced by a Loan Agreement between Borrower and Original Lender dated as of October 7, 2021 (the "Loan Agreement"), a copy of which is attached hereto as *Exhibit C*. The Note, the Mortgage, the Loan Agreement and various other documents executed in connection with the Loan are collectively referred to herein as the "Loan Documents."

**B.      The Securitization and Assignment of the Loan to Lender**

10. Section 11.1(a) of the Loan Agreement provides in part that "Lender shall have the right . . . to securitize the Loan (or any portion thereof and/or interest therein) in a single asset securitization or pooled asset securitization." *See* Ex. C § 11.1(a)(iii).

11. The Loan was securitized in a pooled asset securitization and assigned by Original Lender to Lender effective as of November 16, 2021.

12. In connection with the assignment of the Loan, Original Lender delivered the original Note to Lender with an Allonge firmly affixed thereto. *See* Ex. A (Note with Allonge).

13. Also in connection with the assignment of the Loan, Original Lender executed in favor of Lender an Assignment of Open-End Mortgage and Security Agreement dated November 22, 2021, and effective as of November 16, 2021, a copy of which is attached hereto as *Exhibit D*, which was recorded with the Recorder on March 25, 2022, as Document No. 54008537.

14. Additionally, Original Lender executed in favor of Lender a General Assignment, a copy of which is attached hereto as *Exhibit E*, by which Original Lender, as

3

Assignor, assigned to Lender "all right, title and interest of Assignor in and to the Loan (as defined below) and all other agreements, including but not limited to guaranty agreements, and certificates and documents entered into or delivered in connection with the Loan."

### C.     Relevant Contractual Provisions

15.     The Mortgage secures, *inter alia*, Borrower's repayment of the Debt (as defined in the Loan Agreement) and performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents.  *See* Ex. B (Mortgage) at p. 1.

16.     The Mortgage grants to Lender a first-priority lien and security interest in Borrower's present and future property, rights, interests and estates in the Property.  *See* Ex. B (Mortgage) § 1.1.

17.     The Loan Agreement requires that "Borrower shall make a payment to Lender of interest and, to the extent applicable, principal in the amount of the Monthly Debt Service Payment Amount [of $156,407.69] on the First Monthly Payment Date and on each Monthly Payment Date," which is defined as the sixth day of each calendar month, "occurring thereafter to and including the Maturity Date."  *See* Ex. C (Loan Agreement) § 2.6(a) and at p. 18 (defining "Monthly Debt Service Payment Amount" and "Monthly Payment Date").

18.     The Loan Agreement also requires that Borrower make deposits on each Monthly Payment Date into specified accounts for taxes, insurance and reserves (collectively, the "Accounts").  *See* Ex. C (Loan Agreement), Art. 8.

19.     The Loan Agreement provides that:

> If any principal, interest or any other sum due under the Loan Documents, other than the payment of principal due on the Maturity Date, is not paid by Borrower on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.

4

*See* Ex. C (Loan Agreement) § 2.6(d).

20.    The Loan Agreement further provides that it shall constitute an Event of Default if, among other things, "(A) any monthly Debt Service payment . . . is not paid when due, [or] (B) any deposit to any of the Accounts required hereunder or under the other Loan Documents is not paid when due." *See* Ex. C (Loan Agreement) §§ 10.1(a)(A)-(B).

21.    Additionally, the Loan Agreement provides that, upon the occurrence and during the continuance of any Event of Default, "the then outstanding principal balance of the Loan and, to the extent permitted by applicable law, overdue interest in respect of the Loan, shall each accrue interest at the Default Rate," which is defined as "a rate per annum equal to the lesser of (i) the Maximum Legal rate, or (ii) five percent (5%) above the Interest Rate [of 3.94%]." *See* Ex. C (Loan Agreement) § 2.5(c) and at pp. 12 (defining "Default Rate") and 16 (defining "Interest Rate").

22.    The Mortgage provides that, upon the occurrence and during the continuance of an Event of Default, Lender may, *inter alia*, "declare the entire unpaid Debt to be immediately due and payable" and "institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law." *See* Ex. B (Mortgage) §§ 8.1(a)-(b).

23.    The Loan Agreement provides that Borrower shall pay or reimburse Lender "for Lender's reasonable costs and expenses (including reasonable, actual attorneys' fees and disbursements) in each case, incurred by Lender in accordance with this Agreement in connection with," *inter alia*, "servicing the Loan (including, without limitation, enforcing any obligations of or collecting any payments due from Borrower under this Agreement, the Security Instrument, the Note and the other Loan Documents or with respect to the Property or in connection

5

with any refinancing or restructuring of the credit arrangements provided under this Agreement in the nature of a 'work-out' or of any insolvency or bankruptcy proceedings)." *See* Ex. C (Loan Agreement) § 17.6(viii).

24. The Loan Agreement further provides that the costs and expenses for which Borrower is responsible "shall be deemed to . . . include, without limitation and in each case, any related special servicing fees, liquidation fees, modification fees, work-out fees and other similar costs or expenses payable to any Servicer, trustee and/or special servicer of the Loan (or any portion thereof and/or interest therein)." *See* Ex. C (Loan Agreement) § 17.6(ix)(B)(I).

25. Additionally, the Loan Agreement provides that:

> After the occurrence and during the continuance of an Event of Default and notwithstanding any acceleration of the Debt in accordance with the applicable terms and conditions hereof, the Default Yield Maintenance Premium shall, in all cases, be deemed a portion of the Debt due and owing hereunder and under the other Loan Documents.

*See* Ex. C (Loan Agreement) § 2.7(c) and at p. 12 (defining "Default Yield Maintenance Premium").

### D. Borrower's Default on Its Obligations

26. Following an earlier default and the reinstatement of the Loan on February 18, 2025, Borrower failed to pay the Monthly Debt Service Payment Amounts or the deposits into the Accounts due on multiple Monthly Payment Dates beginning with the Monthly Payment Date for April 2025.

27. Borrower's failure to pay the Monthly Debt Service Payment Amounts or deposits into the Accounts constitutes an Event of Default under the Loan Documents. *See* Ex. C (Loan Agreement) §§ 10.1(a)(A)-(B).

28. Lender, through its counsel, provided a Loan Default Notice to Borrower by letter dated October 27, 2025 (the "Notice of Default"), a copy of which is attached hereto as

6

#4922-2839-1343 v1

*Exhibit F*, which advised Borrower that it was in default under the Loan Documents by virtue of, *inter alia*, failing to pay the Monthly Debt Service Payment Amounts or the deposits into the Accounts due on multiple Monthly Payment Dates beginning with the Monthly Payment Date for April 2025.

29.    The Notice of Default further advised Borrower that:

IN THE EVENT THE DELINQUENT AMOUNTS ARE NOT PAID IN FULL WITHIN TEN (10) BUSINESS DAYS FOLLOWING THE GIVING OF THIS NOTICE, AT THE OPTION OF LENDER, THE DEBT MAY BE ACCELERATED AND DECLARED TO BE IMMEDIATELY DUE AND PAYABLE AND DEMAND MADE FOR THE IMMEDIATE AND FULL PAYMENT OF SAME, AND LENDER MAY EXERCISE SUCH OTHER AND FURTHER RIGHTS, INCLUDING BUT NOT LIMITED TO FORECLOSURE AND ITS OTHER REMEDIES UNDER THE LOAN DOCUMENTS, AS LENDER IN ITS DISCRETION MAY DEEM APPROPRIATE.

*See* Ex. F (Notice of Default) at p. 3.

30.    Although Borrower has made sporadic payments to Lender during the continuance of the Event of Default, Borrower has failed to come current with the amounts due on the Loan and has not otherwise cured the Event of Default.

31.    Lender, through its counsel, provided a Notice of Acceleration to Borrower and Preferred Equity Investor by letter dated June 1, 2026, a copy of which is attached hereto as *Exhibit G*, which advised Borrower and Preferred Equity Investor that "the unpaid Debt secured by the Mortgage is hereby accelerated and declared to be immediately due and payable" and that "demand is hereby made of Borrower and Preferred Equity Investor for the immediate and full payment of the unpaid Debt." *See* Ex. G (Notice of Acceleration) at p. 3.

32.    To date, Borrower has failed to pay the Debt in full or otherwise cure the ongoing Event of Default.

33.    Accordingly, Lender brings this action to foreclose the Mortgage.

#4922-2839-1343 v1

**E.    Lender's Damages**

34.    As of June 5, 2026, there is due and owing on the Loan without defense, deduction, offset, recoupment, or counterclaim the total amount of $41,706,010.05, itemized as follows:

| | |
|---|---|
| Principal | $32,430,891.59 |
| Interest | 752,468.77 |
| Late Charge | 313,071.00 |
| Prepayment Premium | 7,652,045.36 |
| Payoff Quote/Verification Fee | 2,000.00 |
| Default Interest | 2,054,162.14 |
| Protective Advance – Tax | 2,114.91 |
| Protective Advance – Insurance | 24,662.74 |
| Protective Advance – Special Servicer | 6,770.73 |
| Interest on Advances | 35,402.51 |
| Corporate Analysis Fee | 1,200.00 |
| *Less Reserves – Replacement* | (99,973.70) |
| *Less Reserves – Lockbox Receipts* | (858,993.46) |
| *Less Unapplied Funds* | (609,812.54) |
| TOTAL A/O 6/5/2026 | $41,706,010.05 |

35.    Additional interest and default interest in the combined amount of $8,685.07, together with attorneys' fees and expenses, special servicing fees and other fees, charges and costs recoverable under the Loan Documents will continue to accrue on the Loan after June 5, 2026.

8

## COUNT ONE – MORTGAGE FORECLOSURE

36. Paragraphs 1 through 35 of this Complaint are incorporated herein by reference.

37. Borrower executed the Note, which is secured by the Mortgage, in favor of Lender.

38. Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

39. Lender is authorized by the Mortgage and by Pennsylvania law to foreclose the Mortgage in the event of a default by Borrower.

40. There is currently due and owing on the Loan the sum of $41,706,010.05, together with additional interest and default interest, fees, charges and costs accruing after June 5, 2026, as recoverable under the Loan Documents.

WHEREFORE, Lender respectfully requests that judgment in mortgage foreclosure be entered in its favor and against Borrower in the amount of $41,706,010.05, together with additional interest and default interest, fees, charges and costs accruing since June 5, 2026, as recoverable under the Loan Documents, and that Lender be awarded such other and further relief as the Court in its discretion may deem equitable and just.

## COUNT TWO – SALE OF PERSONAL PROPERTY

41. Paragraphs 1 through 40 of this Complaint are incorporated herein by reference.

42. Pursuant to the Mortgage, Borrower granted to Original Lender a security interest in, *inter alia*, certain personal property (the "Personal Property") as more fully described in Section 1.1(e) of the Mortgage and Schedule A to the UCC-1 Financing Statement described below, which are incorporated herein by reference.

9

#4922-2839-1343 v1

43.     Original Lender perfected its lien and security interest in the Personal Property via a UCC-1 Financing Statement, a copy of which is attached hereto as ***Exhibit H***, which was filed with the Pennsylvania Department of State (the "Department") on October 19, 2021, as Filing No. 2021102000195.   Schedule A to the UCC-1 is incorporated herein by reference for purposes of Rule 1147(b)(2) of the Pennsylvania Rules of Civil Procedure.

44.     Original Lender assigned its lien and security interest in the Personal Property to Lender via a UCC-3 Amendment-Assignment, a copy of which is attached hereto as ***Exhibit I***, which was filed with the Department on March 14, 2022, as Filing No. 2022031401606.

45.     Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the Other Loan Documents.

46.     Lender is authorized by the Mortgage and by Pennsylvania law to foreclose its security interest in the Personal Property in the event of a default by Borrower.

47.     Pursuant to Pennsylvania Rule 1147(b), Lender hereby elects to have the Personal Property sold at public sale together with the real property under the Mortgage.

#4922-2839-1343 v1

WHEREFORE, Lender respectfully requests that the Court order the Personal Property to be sold together with the real property under the Mortgage according to law to satisfy the amounts due to Lender and for such other and further relief as the Court in its discretion may deem equitable and just.

Dated:  June 5, 2026

/s/ Raymond A. Quaglia
Raymond A. Quaglia, Esq.
Brian N. Kearney, Esq.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500
quaglia@ballardspahr.com
kearneyb@ballardspahr.com

Counsel for Plaintiff

11

#4922-2839-1343 v1